IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PINTEREST, INC., a Delaware corporation | No. C 12-04586 RS |
| Plaintiffs, | **ORDER GRANTING DEFAULT JUDGMENT AGAINST DEFENDANT** |
| v. | |
| QIAN JIN, | |
| Defendants. | |

## I.   INTRODUCTION

This matter arises from the registration and use of domain names and marks by defendant Qian Jin. Plaintiff Pinterest, Inc.'s First Amended Complaint ("FAC") asserts three claims for relief: (1) cyberpiracy pursuant to the Anti-Cybersquatting Consumer Protection Act ("ACPA"); (2) violation of the Lanham Act for trademark infringement, false designation of origin, and unfair competition; and (3) trademark dilution pursuant to 15 U.S.C. § 1125(c). Pinterest requests default judgment in its favor, an award of full statutory damages, an injunction directing both defendant and his domains' registrars to transfer ownership of the offending domains to

Pinterest, and a permanent injunction ordering defendant to cease infringement of Pinterest's rights. For the following reasons, plaintiff's motion for default judgment is granted.

## II.   BACKGROUND

Plaintiff filed the complaint on August 31, 2012. Defendant was served on January 3, 2013. When defendant did not respond within the time period allowed by Federal Rule 12, plaintiff requested an entry of default judgment on April 10, 2013. The clerk entered default on April 16, 2013.

Plaintiff contends they are the owner of a trademark that defendant has infringed upon by registering 100 online domains very similar to plaintiff's domain pinterest.com. Pinterest.com is a website that allows users to create their own online boards. Users may then save images to these boards and share their boards with others. Pinterest.com has millions of active users and is one of the most popular websites among United States residents. Pinterest holds U.S. Registration No. 4,145,087 for the mark PINTEREST. The registration number was issued on May 22, 2012. Pinterest first used the mark in March 2012. Pinterest uses several iterations of "PIN" on its website.

Defendant Qin Jian is a serial cybersquatter who has registered and owns hundreds of domain names that are very similar to the marks of several large companies. Defendant's apparent purpose in registering the similar domains is to attract visitors to these infringing domains when users attempt to visit the popular company's website, but make a typographical error or misspelling that directs them to one of defendant's domains. By attracting more visitors to his websites, defendant can make more money from advertising revenue.

After pinterest.com and the PIN mark gained fame and began attracting visitors, the defendant registered 100 domains that are very similar to pinterest.com. Examples of similar domains include "pinterests.com," "pimterest.com," and "pinterost.com." Defendant also attempted to register PINTEREST and PINTERESTS as trademarks in the United States and PINTEREST in China. Upon receipt of service of process for this case, the defendant abandoned his United States applications, but not his Chinese application.

Pinterest contends these domains directed web traffic away from pinterest.com, harming them financially. They filed this action in the Northern District of California and now request an entry of default judgment on all three counts.

### III. LEGAL STANDARD

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. Fed. R. Civ. P. 8(b)(6); *see also Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir.1977) (stating the general rule that "upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs,* 792 F.2d 915, 924–25 (9th Cir.1986).

"Granting or denying a motion for default judgment is a matter within the court's discretion." *Landstar Ranger, Inc. v. Parth Enter., Inc.,* 2010 WL 2889490, at *2 (C.D. Cal. Jul.19, 2010) (quoting *Elektra Entm't Group Inc. v. Bryant,* 2004 WL 783123, at *1 (C.D. Cal. Feb.13, 2004)). The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment:

(1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir.1986).

## IV. DISCUSSION

A. Liability

Pinterest argues three separate bases for liability: (1) cyberpiracy; (2) violation of the Lanham Act for trademark infringement, false designation of origin, and unfair competition; and (3) trademark dilution. All three claims revolve around defendant's registering similar sounding domains causing individuals to confuse the content they see on those similar domains with content somehow endorsed by Pinterest. According to Pinterest, that behavior along with defendant's bad faith conduct and efforts to profit from that activity satisfies the elements required for all three claims. The requisite facts for each claim are plead sufficiently in Pinterest's complaint to state claims for relief.

Cyberpiracy liability under the ACPA requires plaintiff to prove three elements: (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted "with bad faith intent to profit from that mark." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010). Plaintiff's complaint sufficiently pleads each of these elements. Regarding the first two elements, the defendant has registered 100 separate domains that are very similar to pinterest.com. These same facts are also sufficient to show bad faith by the defendant under 15 U.S.C. § 1125(d)(1)(B)(i). *See also Facebook, Inc. v. Banana Ads LLC*, WL 1873289 (N.D. Cal. Apr. 30, 2013).

Trademark infringement liability under the Lanham Act requires proving: (1) the plaintiff's marks are valid and protectable, and (2) the defendant's use creates a likelihood of confusion. 15 U.S.C. §§ 1114, 1125. Pinterest has averred that it has received federal trademark registration for the mark PINTEREST. The federal registration of Pinterest's mark satisfies the first element. *See* 15 U.S.C. §§ 1057(b); 1115(a). *See also Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999). Similarly, defendant's registration of 100 domains that are nearly-identical to pinterest.com satisfies the second element. *See Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 506 (9th Cir. 1991).

Liability for trademark dilution exists where: (1) plaintiff's mark is famous and distinctive; (2) defendant began using its own mark in commerce after plaintiff's mark became famous and distinctive; and (3) defendant's mark is likely to dilute plaintiff's mark. *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-1090; 15 U.S.C. § 1125(c). Pinterest's mark is certainly famous and distinctive. Similarly, plaintiff's complaint properly alleges defendant began using his own marks in commerce after Pinterest's mark became famous. Finally, because defendant does not provide any bona fide products or services, the association of defendant's mark with Pinterest's is likely to harm the reputation of Pinterest and create a likelihood of dilution by tarnishment.

The grounds for default also are clearly established. The defendant was served with the complaint and summons and filed no responsive pleading. There is no indication of good faith mistake or excusable neglect justifying defendant's failure to respond or otherwise defend against plaintiff's allegations, nor would the granting of a default judgment result in substantial prejudice to the defendant. Plaintiff has, therefore, established the grounds for default judgment and its entitlement to relief.

B. Remedies

Pinterest seeks $12,000,000 in damages, an injunction transferring ownership of the infringing domains to Pinterest, an injunction barring the defendant from further infringing on the Pinterest trademark, and attorney's costs and fees.

    i.    Damages

Plaintiff bases its $12,000,000 damages on the maximum statutory damages available under two different provisions of the Lanham Act: 15 U.S.C. § 1117(d), which allows for up to $100,000 in damages for each infringing domain, and Section 1117(c), which allows for up to $2,000,000 in damages for willful trademark counterfeiting. Judges have broad discretion in assigning statutory damages. *See eAdGear, Inc. v. Liu*, 2012 WL 2367805, at*18 (N.D. Cal. June 21, 2012).

In considering how much to award under Section 1117(d), courts generally consider a number of factors, including the willfulness of the defendant's cybersquatting, the defendant's status as a "serial" cybersquatter, and other behavior by the defendant evidencing an attitude of contempt towards the court or the proceedings. *Id*. Here, there exist multiple grounds to find infringement was willful. First, as evidenced by defendant's use of 100 different domains, all of which are within a few letters of spelling pinterest.com, defendant infringed with knowledge the domains were used to identify Pinterest's products and services. *See Ringcentral, Inc. v. Quimby*, 711 F. Supp. 2d 1048, 1064 (N.D. Cal. 2010). Second, a defendant's failure to defend an action, as exists here, is enough to deem infringement willful. *eAdGear, WL* 2367805. Plaintiff has also adequately pled evidence the defendant is a serial cybersquatter who has committed similar acts of cyberpiracy against other trademark holders. Defendant's willfulness and repeated infringements justify statutory damages in the amount of $60,000 for each of the 100 infringing domains under Section 1117(d). *See Belks Media v. OnlineNIC*, 2010 WL 7786122 (N.D. Cal. Aug. 23, 2010) (awarding $50,000 per infringing trademark in a default judgment where infringement was willful but plaintiff did not show the value of the infringement); *see also Verizon Cal., Inc. v. Onlinenic, Inc.*, 2009 WL 2706393 at *3 (N.D. Cal. Aug.25, 2009) (awarding $50,000 per domain name for multiple violations).

For damages under 15 U.S.C. §§ 1117(c), courts consider similar factors as in Section 1117(d), including: defendant's willfulness in committing the violation, deterring future violations, and defendant's status as a "serial" cybersquatter. *See Belks Media*, 2010 WL 7786122. As discussed above, the defendant's behavior is willful and plaintiff has pled sufficient facts to show defendant is a "serial" cybersquatter. Pinterest requests the maximum statutory damages—$2,000,000. Pinterest points only to *Phillip Morris v. Castworld* as an example of a case in which this maximum was awarded. 219 F.R.D. 494, 502 (C.D. Cal. 2003). In *Phillip Morris*, defendant was caught importing millions of counterfeit cigarettes into the US and the court held defendant liable for the counterfeit of two separate trademarks. *Id*. at 502-503. The statutory maximum was awarded because defendant not only infringed upon two of plaintiff's

trademarks, but also smuggled millions of dollars' worth of counterfeit cigarettes past customs, and failed to defend against the action. *Id.* Here, defendant has infringed upon only one trademark and plaintiff has not pled facts sufficient to show they lost an amount similar to the plaintiff in *Phillip Morris. Id.* However, as discussed above, while defendant's conduct is not as egregious as that of the *Phillip Morris* defendant, his cybersquatting is willful and serial. Applying a factor of 60% of statutory damages for defendant's violation of Section 1117(d), plaintiff is awarded $1,200,000 under Section 1117(c). Such a percentage of the available statutory damages is also consistent with other courts' awards of statutory damage amounts in cybersquatting cases where the defendant acted willfully and continuously. *See e.g., Belks Media v. OnlineNIC,* 2010 WL 7786122 (N.D. Cal. Aug. 23, 2010) (awarding 50% of statutory damages where infringement was willful but plaintiff did not show the value of the infringement); *see also Verizon Cal., Inc. v. Onlinenic, Inc.,* 2009 WL 2706393 at *3 (N.D. Cal. Aug.25, 2009) (awarding 50% of statutory damages for multiple violations).

      ii.    Injunctive Relief

Pinterest next requests an injunction ordering the defendant and the registries of infringing domains to transfer all infringing domains to Pinterest, and a permanent injunction barring the defendant from continuing to infringe on Pinterest's mark in the future. Injunctive relief is often the remedy of choice in trademark cases when there is no adequate remedy at law. *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1180 (9th Cir. 1988). "[A] court may order the forfeiture or cancellation of [a] domain name or the transfer of [a] domain name to the owner of the mark." 15 U.S.C § 1125(d)(1)(c). Courts have ordered such transfers from both owners of the infringing mark as well as the registrars of those marks who were not defendants to that action. *eAdGear,* 2012 WL 2367805. Such a transfer is sometimes necessary to prevent further infringement and ordering both the registrant and the registrar to make such a transfer is the most effective way to ensure the transfer occurs in a timely manner. *See id.*

Here, such an order is similarly necessary to ensure plaintiff's mark is no longer infringed upon by the defendant. While the defendant might be difficult to locate or to enforce this order

against, the registries are likely easier to locate and have the ability to provide plaintiff with the remedy they deserve. Furthermore, without a transfer from the registries to the plaintiff, defendant is likely to infringe upon the PINTEREST mark in the future. Therefore, defendant is hereby ordered to transfer all infringing marks to Pinterest. Because the issuance of an injunction ordering the transfer of the infringing domains from the registrar to Pinterest is within the court's authority and likely necessary to effectuate the purposes of this injunction, those registries are also hereby ordered to transfer the infringing domains to Pinterest. *See Chanel, Inc., v. Lin,* 2010 WL 2557503, at *12 (N.D. Cal. May 7, 2010).

Plaintiff has also pled that without a permanent injunction barring defendant from infringing upon the Pinterest mark, defendant is likely to continue his infringement. Because defendant has chosen to ignore this lawsuit and has a history of "serial" infringement, plaintiff is likely to suffer irreparable future harm if no such injunction is ordered. *See PepsiCo, Inc. v. California Sec. Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Defendant is hereby ordered not to register misleading or similar-sounding domain names or otherwise infringe upon the PINTEREST mark in the future. Such misleading domain names include strings of letters that contain the word pinterest or would contain the word pinterest with the addition, subtraction, or replacing of a few characters.

    iii.    Litigation Costs

Pinterest also moves to recover their costs in this action under Civil Local Rule 54-3(a). Under the Lanham Act, a plaintiff that prevails on a claim under § 1125(d) is entitled to costs. 15 U.S.C. § 1117(a). Civil Local Rule 54-3(a) similarly allows recovery of the filing fee and fees for service of process reasonably required and actually incurred. The second declaration of plaintiff's attorney asserts plaintiff's costs to total $2,821.50. Plaintiff is hereby awarded $2,821.50 in costs.

    a.    CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment is granted.

IT IS SO ORDERED.

Dated: 9/30/13

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE